UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DONNELL WILLIAMS,

          Plaintiff,                   Case No. 1:19-cv-721

v.                                  Honorable Paul L. Maloney

H. WOODIN et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under Federal Rule of Civil Procedure 21, the Court is permitted to drop parties *sua sponte* when the parties have been misjoined. Pursuant to that rule, the Court will drop as misjoined Defendants Loomis, Unknown Party #1, Rick, Rewerts, Schiebner, Winger, Pung, Washington, Stevenson, Fleisher, Sanchez, and D. Dine and dismiss Plaintiff's claims against them without prejudice.

With regard to the claims that remain, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Reviewing Plaintiff's remaining claims against that standard, the Court will dismiss all of Plaintiff's claims against Defendant Woodin as well as the claims Plaintiff raises

against Defendant Stephan in her official capacity. Plaintiff's claims against Defendant Stephan in her personal capacity may proceed.

**Discussion**

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues DRF Mental Health Chief H. Woodin and healthcare provider Unknown Stephan. He sues DRF Librarian R. Loomis, Unknown Party #1 (described as unknown female librarian), and Librarian Tech S. Rick. Plaintiff sues MDOC Director Heidi Washington, DRF Warden Randee Rewerts, Deputy Warden J. Schiebner, and Assistant Deputy Wardens J. Winger and B. Pung. Finally, Plaintiff sues DRF Prison Counselors Unknown Stevenson and Unknown Fleisher, Corrections Officer Unknown Sanchez, and Mailroom Supervisor D. Dine.

### A.      Defendants Woodin and Stephan

Plaintiff arrived at DRF on June 27, 2019. The next day, Defendant Woodin called Plaintiff out for mental health treatment. On July 1, Defendant Stephan called Plaintiff out for treatment. On July 3, Plaintiff sent Defendants Woodin and Stephan a kite about nightmares he was suffering, nightmares about correctional officers from Chippewa Correctional Facility and Warden Connie Horton hanging Plaintiff in his segregation cell.

On July 8, Plaintiff saw Defendant Stephan about the nightmares. According to Plaintiff, his description of the nightmares prompted Defendant Stephan to ask him if he was going to sue people from Chippewa. When Plaintiff responded he would, Defendant Stephan replied: "You will not be su[]ing none of my co-works that work for the Department of Correction, and I

2

will be talking [to] my boss that I took you off of outpatient treatment for trying to sue the Michigan Department of Correction."  (Compl., ECF No. 1, PageID.7.)

Thereafter, Plaintiff sent kites to Defendants Stephan and Woodin regarding mental health treatment, but got no response.  So, on July 11, Plaintiff filed a grievance against Defendants Stephan and Woodin for denying Plaintiff outpatient treatment in retaliation for suing the Michigan Department of Corrections.  Plaintiff has continued to kite these defendants, but he has received no responses and, apparently, no outpatient treatment.

### B.      Defendants Loomis, Unknown Female Librarian, and S. Rick

On July 11, Defendant Loomis and two library techs refused to put Plaintiff on call-out to see the legal writer.  On July 16, Plaintiff grieved them.  On August 1, Plaintiff was interviewed regarding the grievance by Unknown Female Librarian and S. Rick.  According to Plaintiff, because he would not sign off on the grievance, those two retaliated against Plaintiff saying that they were taking Plaintiff off of law library call out and that the legal writer would not file Plaintiff's motions.  Plaintiff filed a grievance against those two Defendants on August 6.  He has not been put back on call-out for the law library or the legal writer service since that time.

Plaintiff attaches the initial grievance and the response to his complaint.  (ECF No. 1-1, PageID.19-20.)  It does not appear that Plaintiff takes issue with the information in the response.  The response reveals that when Plaintiff arrived at DRF he had to be approved for the legal writer program there before he could use the program.  He applied on July 2.  He was approved on July 16.  When Loomis and the library techs refused to call Plaintiff out for the legal writer, Plaintiff was not approved for the program.

### C. Defendants Washington, Rewerts, Schiebner, Winger, and Pung

On August 2, Plaintiff filed a "Declaratory Ruling Motion" on Defendants Washington, Rewerts, Schiebner, Winger, and Pung, because they knew DRF Grievance Coordinator Becher was not processing Plaintiff's grievances, yet they did nothing about it.

### D. Defendants Stevenson, Fleischer, Sanchez, and Dine

On August 8 and 9, Plaintiff could not get anyone to process his legal mail. On August 12, Plaintiff filed a grievance about it. That day, Defendant Stevenson called Plaintiff out to Defendant Fleischer's office for mail processing. Plaintiff gave Stevenson one legal mail envelope and disbursement form and one indigent mail envelope and disbursement form. Stevenson told Plaintiff that he would have Defendant Sanchez shake down Plaintiff's cell in retaliation for Plaintiff filing the grievance. Minutes later, Defendant Sanchez shook down Plaintiff's area of control and told Plaintiff he was doing so in retaliation for Plaintiff's filing of the grievance.

On August 13, Plaintiff gave Defendant Fleischer one envelope and disbursement form for a letter to a family member. On August 15, the mail came back to Plaintiff from Defendant Dine, the mailroom supervisor, after it had been opened and read by staff members. Plaintiff claims he was entitled to indigent postage that should have permitted the envelope to be mailed. The documents he attaches to his complaint reveal that Defendant Dine concluded Plaintiff had exhausted his indigent postage allotment for the month and did not have postage to send the August 13, (or another) letter. It appears that Plaintiff and Defendant Dine differ in their interpretation of the postage policy.

### E. Defendants Washington, Rewerts, Schiebner, Winger, and Pung

On August 19, Plaintiff filed a staff corruption grievance against the group for not disciplining their employees when they tampered with outgoing mail as described above.

### F. Relief sought

Plaintiff seeks $35,000 in punitive damages against each Defendant in the Defendant's official capacity and $35,000 in punitive damages against each Defendant in the Defendant's personal capacity.

## II. Misjoinder

The joinder of claims, parties, and remedies is "strongly encouraged" when appropriate to further judicial economy and fairness. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). This does not mean, however, that parties should be given free rein to join multiple plaintiffs and multiple defendants into a single lawsuit when the claims are unrelated. *See, e.g., Pruden v. SCI Camp Hill*, 252 F. App'x 436, 437 (3d Cir. 2007) (per curiam); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) (adopting magistrate judge's report).

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18.  Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), *quoted in Proctor*, 661 F. Supp. 2d at 778, and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact."  *Proctor*, 661 F. Supp. 2d at 778.  When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts of . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations."  *Id.* (quoting *Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that

were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under

the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some

form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter

frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by

liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA

also contains a "three-strikes" provision requiring the collection of the entire filing fee after the

dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in

forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three

strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson

v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one

complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies

the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant
> 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated
> claims against different defendants belong in different suits, not only to prevent the
> sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to
> ensure that prisoners pay the required filing fees--for the Prison Litigation Reform
> Act limits to 3 the number of frivolous suits or appeals that any prisoner may file
> without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person -- say, a suit
> complaining that A defrauded the plaintiff, B defamed him, C punched him, D
> failed to pay a debt, and E infringed his copyright, all in different
> transactions -- should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166,

168-69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based

on actions taken after the filing of his original complaint would have defeated the purpose of the

three strikes provision of PLRA); *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464

(5th Cir. 1998); *Shephard v. Edwards*, 2001 WL 1681145, *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should his claims turn out to be frivolous.

The foundation of Plaintiff's complaint appears to be his claim for retaliation against Defendants Woodin and Stephan. They are the first Defendants he names, it is the first claim he alleges, and it is the first claim in time. Although Plaintiff's other claims followed this first claim in chronological order, and also allege retaliation, they bear no other relationship to each other. The are raised against different Defendants, based on different protected conduct, and subjected Plaintiff to different purportedly adverse actions. The claims are entirely discrete, there is no transactional relationship between them. Therefore, the claims and parties are misjoined.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 572-573 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'"); *DirecTV,*

*Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

In this case, Plaintiff brings his causes of action against the improperly joined defendants under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

All of the actions about which Plaintiff complains occurred in 2019, well within the three-year period of limitations. Those claims are not at risk of being time-barred. Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dropped and the claims against them dismissed. Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Loomis, Unknown Party #1, Rick, Rewerts, Schiebner, Winger, Pung, Washington, Stevenson, Fleisher, Sanchez, and D. Dine from the action, and dismiss Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits by Plaintiff.[1] *See Coughlin*, 130 F.3d at 1350 ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs."); *Carney*, 2008 WL 485204, at *3 (same).

### III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

---

[1] Plaintiff is cautioned, again, that he must limit all future actions to claims and Defendants that are transactionally related to one another.

679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Official capacity claims

Plaintiff sues Defendants Woodin and Stephan, in their respective official and personal capacities, seeking damages only. A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity: in this case, the Michigan Department of Corrections. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592-93 (6th Cir. 1989).

Therefore, the Court also dismisses the Plaintiff's suit for monetary relief against Defendants Woodin and Stephan in their official capacities.

## B.    Supervisory liability

The only allegations Plaintiff makes against Defendant Woodin are that he provided treatment for Plaintiff and then did not respond to Plaintiff's kites seeking additional treatment. Plaintiff also notes that he is the head of the mental health department at DRF.

To the extent Plaintiff attempts to impose liability on Defendant Woodin for the conduct of Defendant Stephan because Woodin is her superior, he fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

## C.    First Amendment retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a

person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges protected conduct—the filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Moreover, refusing to provide needed mental health treatment could certainly deter a person of ordinary firmness from exercising his First Amendment rights. Finally, Plaintiff's allegations show through Defendant Stephan's own words that she was motivated to deny Plaintiff treatment by Plaintiff's exercise of his First Amendment rights. Accordingly, Plaintiff has stated a First Amendment retaliation claim against Defendant Stephan.

Plaintiff makes no allegations, however, from which the Court might infer a retaliatory intent on the part of Defendant Woodin. Accordingly, Plaintiff has failed to state a First Amendment retaliation claim against Defendant Woodin.

### D.    Eighth Amendment deliberate indifference

Although Plaintiff does not expressly rely on the Eighth Amendment, his claim that Defendants Woodin and Stephan refused to provide mental health treatment implicates the protections of the Eighth Amendment prohibiting cruel and unusual punishment. The Eighth Amendment requires prison officials to provide medically necessary mental health treatment to inmates. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4

(6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Construed liberally, Plaintiff's allegations against Defendant Stephan support the inference that she was aware of a risk of harm to Plaintiff if treatment were discontinued, and she deliberately attempted to exploit that risk by forcing Plaintiff to choose between his First Amendment rights and medical treatment. Plaintiff's allegations, therefore, suffice to state an Eighth Amendment claim against Defendant Stephan. The same is not true with regard to Defendant Woodin. Plaintiff fails to allege facts that support an inference that Woodin was aware of a risk to Plaintiff and consciously disregarded that risk. Accordingly, Plaintiff has failed to state an Eighth Amendment claim against Defendant Woodin.

### Conclusion

Having conducted the review authorized by the joinder rules, the Court is permitted to drop as misjoined parties Defendants Loomis, Unknown Party #1, Rick, Rewerts, Schiebner, Winger, Pung, Washington, Stevenson, Fleisher, Sanchez, and D. Dine The Court will dismiss Plaintiff's claims against them without prejudice.

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Woodin will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's claims against Defendant Stephan in her official capacity. Plaintiff's First Amendment retaliation claims and Eighth Amendment claims against Defendant Stephan in her personal capacity remain in the case.

An order consistent with this opinion will be entered.


Dated:   September 23, 2019                    /s/ Paul L. Maloney
                                               Paul L. Maloney
                                               Chief United States District Judge